| | |
|---|---|
| 1 | Neville L. Johnson (SBN 66329) |
| 2 | Daniel B. Lifschitz (SBN 285068) |
|   | Nima Kamali (SBN 294401) |
| 3 | **JOHNSON & JOHNSON LLP** |
|   | 439 North Canon Drive, Suite 200 |
| 4 | Beverly Hills, California 90210 |
|   | Telephone:  (310) 975-1080 |
| 5 | Facsimile:   (310) 975-1095 |
| 6 | Email:       njohnson@jjllplaw.com |
|   |              dlifschitz@jjllplaw.com |
| 7 |              nkamali@jjllplaw.com |
| 8 | *Attorneys for Plaintiff* |
| 9 | AOM MUSIC, INC |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AOM MUSIC, INC., a Florida corporation, | CASE NO.  2:21-cv-7691 |
|   | **COMPLAINT FOR:** |
| Plaintiff, |   |
|   | 1. **DIRECT COPYRIGHT INFRINGEMENT** |
| vs. | 2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT** |
| BENITO ANTONIO MARTÍNEZ OCASIO p/k/a BAD BUNNY, an individual; MARCOS EFRAIN MASIS p/k/a TAINY, an individual; RANDY ARIEL ORTIZ ACEVEDO p/k/a RANDY, an individual; JOEL MUÑOZ p/k/a JOWELL, an individual; EDWIN ROSA p/k/a ÑENGO FLOW, an individual; ORMANI PEREZ GONZALES p/k/a DJ ORMA, an individual; RIMAS ENTERTAINMENT LLC, a Puerto Rican limited liability company; CDA MUSIC GROUP INC. d/b/a DJ NEGRO PUBLISHING, a Florida corporation; EMI BLACKWOOD MUSIC INC, a Connecticut corporation; SONGS OF UNIVERSAL, INC. d/b/a RISAMAR PUBLISHING, a California corporation; THE ROYALTY NETWORK, INC. d/b/a TEYNOR | **DEMAND FOR JURY TRIAL** |

1
COMPLAINT

| | |
|---|---|
| 1 | MUSIC, a New York corporation; UNIVERSAL SONGS OF POLYGRAM INTERNATIONAL INC., a Delaware corporation; and DOES 1-10, inclusive; |
| 2 | |
| 3 | |
| 4 | |
| 5 | Defendants. |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

COMPLAINT

Plaintiff AOM Music, Inc. d/b/a BM Records ("BM Records" or "Plaintiff"), by and through his undersigned attorneys, brings this Complaint against Benito Antonio Martínez Ocasio p/k/a Bad Bunny ("Ocasio"), Marcos Efrain Masis p/k/a Tainy ("Masis"), Randy Ariel Ortiz Acevedo p/k/a Randy ("Acevedo"), Joel Muñoz p/k/a Jowell ("Muñoz"), Edwin Rosa p/k/a Ñengo Flow ("Rosa"), Ormani Perez Gonzales p/k/a DJ Orma ("Gonzales"), Rimas Entertainment LLC ("Rimas"); CDA Music Group Inc. dba DJ Negro Publishing ("DNP"), EMI Blackwood Music, Inc. ("EMI"), Songs of Universal, Inc. dba Risamar Publishing ("Universal") The Royalty Network, Inc. dba Teynor Music ("TRNI"), Universal Songs of Polygram International Inc. ("Polygram"), and Does 1-10 (collectively "Defendants") upon knowledge and belief as to himself and as to all other matters upon information and belief of his undersigned attorneys. With respect to facts alleged herein on information and belief, Plaintiff and his undersigned attorneys are informed and believe that those facts are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, because, among other reasons, evidence to support those facts is exclusively in Defendants' possession.

## NATURE OF THE ACTION

1. This is an action for copyright infringement arising out of Plaintiffs' ownership of three copyrighted musical works – "Besa Tu Cuerpo," "Chocha Con Bicho," and "Sigan Bailando" (collectively the "Playero Works") – and Defendants' unauthorized incorporation of the Playero Works into the hit song "Safaera," for which no license or authorization was obtained.

## PLAINTIFF

2. Plaintiff BM Records is a corporation organized under the laws of Florida with its principal place of business in Pasco County, Florida.

## DEFENDANTS

3. Defendant Benito Antonio Martínez Ocasio p/k/a Bad Bunny is an individual domiciled, on information and belief, in San Juan, Puerto Rico.

4. Defendant Marcos Efrain Masis p/k/a Tainy is an individual domiciled, on information and belief, in San Juan, Puerto Rico.

5. Defendant Randy Ariel Ortiz Acevedo p/k/a Randy is an individual domiciled, on information and belief, in San Juan, Puerto Rico.

6. Defendant Joel Muñoz p/k/a Jowell is an individual domiciled, on information and belief, in San Juan, Puerto Rico.

7. Defendant Edwin Rosa p/k/a Ñengo Flow is an individual domiciled, on information and belief, in San Juan, Puerto Rico.

8. Defendant Ormani Perez Gonzales p/k/a DJ Orma is an individual domiciled, on information and belief, in San Juan, Puerto Rico.

9. Defendant Rimas Entertainment LLC, on information and belief, is, and at all relevant times was, a limited liability partnership organized under the laws of Puerto Rico with its principal place of business in San Juan, Puerto Rico.

10. Defendant CDA Music Group Inc. dba DJ Negro Publishing, on information and belief, is, and at all relevant times was, a corporation organized under the laws of Florida with its principal place of business in Miami, Florida.

11. Defendant EMI Blackwood Music, Inc., on information and belief, is, and at all relevant times was, a corporation organized under the laws of Connecticut with its principal place of business in New York, New York.

12. Defendant Songs of Universal, Inc. dba Risamar Publishing, on information and belief, is, and at all relevant times was, a corporation organized under the laws of California with its principal place of business in Santa Monica, California.

13. Defendant The Royalty Network, Inc. dba Teynor Music, on information and belief, is, and at all relevant times was, a corporation organized under the laws of New York with its principal place of business in New York, New York.

14. Defendant Universal Songs of Polygram International Inc., on

1  information and belief, is, and at all relevant times was, a corporation organized
2  under the laws of Delaware with its principal place of business in Santa Monica,
3  California.
4      15.    Defendants Does 1 through 10 are sued herein by fictitious names for
5  the reason that their true names are unknown to Plaintiffs. Plaintiffs will seek leave
6  to amend this complaint to allege the true names and capacities of these Defendants
7  when the same have been ascertained. Plaintiffs are informed and believes and
8  based thereon alleges that these fictitiously named Defendants are responsible in
9  some manner for the actions and damages alleged herein.
10     16.    Plaintiffs are further informed and believe and based thereon allege
11 that Defendants at all times herein alleged were the agents, employees, servants,
12 joint venturers and/or co-conspirators of each of the other remaining Defendants,
13 and that in doing the things herein alleged were acting in the course and scope of
14 such agency, employment, joint venture and/or conspiracy.

## JURISDICTION AND VENUE

16     17.    Subject matter jurisdiction is appropriate to this Court under 28 U.S.C.
17 §§ 1331 and 1338 because this action arises under the Copyright Laws of the
18 United States (17 U.S.C. §§ 101 et seq.), and this Court has supplemental
19 jurisdiction over any related state law claims under 28 U.S.C. § 1367.
20     18.    Venue is appropriate under 28 U.S.C. §§ 1391 and 1400 because a
21 substantial part of the events giving rise to the claims for relief occurred in Los
22 Angeles County, and Defendants' actions caused injury in Los Angeles County.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
## BM Records and DJ Playero

25     19.    BM Records was founded in 1978 by Pedro Merced and eventually
26 became one of the largest and most influential record labels in Puerto Rican history,
27 selling more than 65 million records across multiple territories.
28     20.    BM Records was an early popularizer of the nascent "underground"

genre of music, which eventually became more widely known as "reggaeton." The genre combined Spanish-language singing and rapping with musical influences including American hip hop, Latin American, and Caribbean music.

21. Prior to BM Records' investment in the genre, reggaeton music was largely spread by independent disc jockeys ("DJs"), who would curate and produce music for young Puerto Rican artists, then distribute said music via cassette tapes sold in the streets, public schools, "caserios," "barrios," and public residences.

22. One of the more influential reggaeton DJs was Pedro Gerardo Torruellas Brito p/k/a DJ Playero ("DJ Playero"). His "Playero" mixtapes in particular served to jumpstart the careers of numerous highly influential Latin artists, including Ramón Luis Ayala Rodríguez p/k/a Daddy Yankee.

23. In 1991, Pedro Merced approached DJ Playero on behalf of BM Records, and the parties entered into a distribution deal. In 1992, BM Records released "Playero 37 Underground," featuring "Besa Tu Cuerpo" and "Chocha Con Bicho." The release was wildly successful, quickly selling tens of thousands of copies in Puerto Rico and achieving platinum status within eight months.

24. Over the following years, Pedro Merced would help shape the burgeoning musical genre by working with the artists on BM Records' roster to give their output greater commercial appeal. "Playero Street Mix Vol. 1," released by BM Records in 1995, became the first underground record to gain significant promotion by top Puerto Rican radio stations, ultimately selling more copies during the holiday period of 1995 in Puerto Rico than any other record. This was followed by "Playero Street Mix Vol. 2" in 1996, featuring "Sigan Bailando."

25. "Playero 37: Underground" (Registration No. SR0000253493) and "Playero Greatest Hits: Street Mix 2" (Registration No. SR0000251271) were registered with the United States Copyright Office on June 3, 1998, each listing DJ Playero as sole author and BM Records d/b/a. Latin Music Dist., Inc, Inc.as copyright claimant. On July 1, 2020, the Playero Works were transferred from Latin

Music Dist., Inc. to Plaintiff by written copyright assignment.

26. Owing to the success of these and other releases, BM Records struck a partnership with a Latin music distributor in New York City, which helped to boost the popularity of reggaeton beyond Puerto Rico and the United States generally. DJ Playero's music was played on the biggest Latin radio station in New York, gained shelf space in numerous American retailers (such as Tower Records, Musicland, Sam Goody's, and Specs), and was licensed and distributed in various countries including the Dominican Republic, Venezuela, Colombia, Panama, and Mexico.

27. The influence of the music released by BM Records, and DJ Playero's mixtapes in particular, can be readily identified in the work of later multi-platinum Latin recording artists such as J. Balvin, Ozuna, Shakira, Maluma, and Becky G. Many of these artists would go on to collaborate with pop artists in America such as Katy Perry, Beyonce, Justin Bieber, Nicki Minaj, DJ Snake, Diplo, and Enrique Iglesias, further spreading the fame and influence of reggaeton music.

## Bad Bunny and "Safaera"

28. Ocasio is a Puerto Rican reggaeton artist who achieved chart-topping success with his second studio album, "YHLQMDLG," becoming the best-selling Latin album in the United States of 2020, Spotify's most streamed album globally of 2020, and winner of Best Latin Pop or Urban Album at the 63rd Annual Grammy Awards, which was held on March 14, 2021. The album's breakout single, "Safaera," has been described as "a five-minute tribute to DJ Playero's genre-defining mixtapes of the 1990s"[1] and "a journey through DJ Playero style underground—complete with cut-and-paste sampling[.]"[2]

---

[1] Matthew Ismael Ruiz, "Bad Bunny: LAS QUE NO IBAN A SALIR Album Review," *Pitchfork* (May 16, 2020), https://pitchfork.com/reviews/albums/bad-bunny-las-que-no-iban-a-salir/ (last accessed December 7, 2020).

[2] Eduardo Cepeda, "On 'YHLQMDLG,' Bad Bunny Breaks the Urbano Mold From Within," *Remezcla* (March 3, 2020), https://remezcla.com/releases/music/bad-bunny-yhlqmdlg-album-review/ (last accessed December 7, 2020).

29. "Safaera" includes samples of various third-party compositions and sound recordings, as described by Isabella Herrera of Pitchfork:

> The five-minute track ventures through at least eight beat changes, five different rap flows, and 10+ years of references. A selected catalog of some of its citations: the one-stringed tumbi sample from Missy Elliott's "Get Ur Freak On"; the bassline from Bob Marley's "Could You Be Loved"; the siren-like synths from DJ Nelson and DJ Goldy's *Xtassy Reggae* tape; the opening hook from Cosculluela's "Pa' La Pared" featuring Jowell & Randy; the *Jaws* sample from Alexis y Fido's "El Tiburón"–the list goes on. Producers Tainy and DJ Orma select riddims and references that, for many of us, will evoke memories of denim stains on basement walls, transferred via *contra-la-pared perreo*, or maybe humid summers spent dancing at *marquesina* parties when visiting our families back home.[3]

30. On information and belief, Defendants were well aware of the need to "clear" the various third-party works sampled on "Safaera" by obtaining licenses to each, as demonstrated by the fact that, for example, Melissa Elliott p/k/a Missy Elliot is credited as a writer on "Safaera" due to its sampling of her hit song "Get Ur Freak On." Indeed, "Safaera" was briefly removed from the music streaming service Spotify on May 14, 2020 due to Defendants' failure to clear a sample on the track and was later restored upon obtaining such clearance.[4] However, at no point did Defendants ever "clear" the Playero Works for use on "Safaera."

31. "Safaera" was an instant success for Defendants, having been streamed over one billion times between YouTube[5] and Spotify alone.[6] On November 12,

---

[3] Isabella Herrera, "'Safeara' by Bad Bunny Review," *Pitchfork* (Mar. 4, 2020), https://pitchfork.com/reviews/tracks/bad-bunny-safaera-ft-jowell-and-randy-and-nengo-flow/ (last accessed December 7, 2020).

[4] *See* Spotify Mexico, *Twitter* (May 15, 2020), https://twitter.com/SpotifyMexico/status/1261478552157007879.

[5] Bad Bunny, "Safaera - Bad Bunny x Jowell & Randy x Ñengo Flow | YHLQMDLG," *YouTube* (Feb. 28, 2020), https://youtu.be/jCQ_6XbATPc (313,503,826 views as of September 24, 2021); Bad Bunny, "Safaera," YouTube (Feb. 29. 2020), https://youtu.be/PZ6CgcC2uEs (151,394,814 views as of September 24, 2021); Keller Lokomotion, "Safaera (LETRA) - Bad Bunny x Jowell & Randy x Ñengo Flow," *YouTube* (Mar. 10, 2020), https://youtu.be/tuQVkIvYJr0 (32,130,359 views as of September 24, 2021).

2020, it was certified Gold, Platinum, and 21x Multi-Platinum for sales of 1.26 million units by the Recording Industry Association of America.[7]

32. Defendants Ocasio, Masis, Acevedo, Muñoz, Rosa, and Gonzales are each credited as writers of "Safaera," which is commercially distributed by Rimas and for which DNP, EMI, Universal, TRNI, and Polygram serve as publishers.

### Infringement of Plaintiff's Works on "Safaera"

33. Of importance to the instant action, "Safaera" includes at least four distinct uncleared samples of the Playero Works. The following chart illustrates the lyrics taken from the Playero Works as they appear in "Safaera":

|   | **Playero Works** | **Safaera** |
|---|---|---|
| A | *Chocha Con Bicho 0:00-0:10* | *Safaera 1:43-1:50* |
|   | Chocha con bicho, bicho con nalgas<br>Cho-Chocha con bicho, bicho con nalgas<br>Cho-Chocha con bicho, chocha con bicho<br>Chocha con bicho, bicho con nalgas | Chocha con bicho, bicho con nalga<br>Cho-Chocha con bicho, bicho con nalga, sí<br><br>Chocha con bicho, bicho con nalga |
| B | *Besa Tu Cuerpo 1:11 - 1:13* | *Safaera 1:50-1:53* |
|   | Te-ta rozando mis tetilla' | Te-ta rozando mi tetilla |
| C | *Sigan Bailando 1:06 - 1:08* | *Safaera 1:53-1:56* |
|   | Este año no quiero putilla | Este año no quiero putilla |
| D | *Sigan Bailando 1:15 - 1:33* | *Safaera 1:56-2:13* |
|   | Te ven con mucho macho y te quieren pegar<br>Te ven empericao y te quieren pegar<br>Y los que fuman pasto se quieren pegar<br><br>Porque está bien buena, porque está bien buena<br>Nalgas bien grande como Iris Chacón<br>Teta bien grande como Lourdes Chacón<br>La chocha no se porque no la he visto<br>Pero vamos pa'la cama a divertirse | Te ven con mucha' prenda' y se quieren pegar<br>Te ven bien activa'o y se quieren pegar<br><br><br>Porque está bien buena, porque está bien buena<br>Teta bien grande como Lourdes Chacón<br>Las nalga' bien grande como Iris Chacón<br>La chocha no sé porque no la he visto<br>Pero vamo' pa' la cama a clavarte en panty |

34. Similarly, a side-by-side transcription of these four segments, attached

---

[6] Bad Bunny, Jowell & Randy, Nengo Flow, "Safaera," *Spotify*, https://open.spotify.com/track/2DEZmgHKAvm41k4J3R2E9Y (546,904,358 streams as of September 24, 2021).

[7] "Gold & Platinum," Recording Industry Association of America, https://www.riaa.com/gold-platinum/?tab_active=default-award&ar=Bad+Bunny%2C+Jowell+%26+Randy%2C+%C3%91engo+Flow&ti=Safaera

1  hereto as **Exhibit 1**, reveals a quantitatively and qualitatively substantial amount of
2  similarity between protectable aspects of the works, including shared pitches (i.e.,
3  selection of musical notes), rhythms (i.e., patterns of sound and silence), and
4  syllables shared between the works' vocal melodies.

5    35. At no point in time did any of the Defendants obtain a valid license to
6  sample Plaintiff's Works as part of "Safaera." As such, the continuing exploitation
7  of "Safaera" infringes the copyrights to the Playero Works owned by Plaintiff.

## FIRST CAUSE OF ACTION
## DIRECT COPYRIGHT INFRINGEMENT
### (Against All Defendants)

11    36. Plaintiff hereby incorporates the allegations set forth above in
12  paragraphs 1 through 35 above, as though fully set forth herein.

13    37. Without Plaintiff's authorization, license, or consent, Defendants
14  prepared "Safaera" as a derivative work based upon the Playero Works, then
15  reproduced, prepared derivative works based upon, distributed, and publicly
16  performed "Safaera," thereby infringing Plaintiff's exclusive rights of copyright in
17  the Playero Works under the Copyright Act, 17 U.S.C. §§ 106(1)-(4), 501.

18    38. On information and belief, Defendants have authorized and continue to
19  authorize the reproduction, adaptation, distribution, and/or public performance of
20  "Safaera" in physical CDs, records, digital downloads, and digital streams.

21    39. Each unauthorized reproduction, preparation of a derivative work,
22  distribution, and/or public performance of the Playero Works constitutes a separate
23  and distinct act of copyright infringement.

24    40. Defendants' conduct has been and continues to be intentional, willful
25  and with full knowledge of Plaintiff's copyrights in the Playero Works and the
26  direct infringement thereof.

27    41. Pursuant to 17 U.S.C. § 504(b), as a direct and proximate result of
28  Defendants' direct infringement of Plaintiff's copyrights, Plaintiff is entitled to

1  recover his actual damages, including Defendants' profits from infringement, as
2  will be proven at trial. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. §
3  504(c), Plaintiff is entitled to recover up to $150,000 in statutory damages for each
4  infringed work.

5      42. Plaintiff is also entitled to recover its attorneys' fees and costs pursuant
6  to 17 U.S.C. § 505, and prejudgment interest according to law.

7      43. Defendants are causing, and unless enjoined by the Court, will
8  continue to cause, Plaintiff irreparable harm for which Plaintiff has no adequate
9  remedy at law. Plaintiff is entitled to an injunction under 17 U.S.C. § 502,
10 prohibiting the continued infringement of the Playero Works and an order under 17
11 U.S.C. § 503 directing the impoundment, destruction or other reasonable
12 disposition of all infringing works.

## SECOND CAUSE OF ACTION
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against All Defendants)

16     44. Plaintiffs hereby incorporate the allegations set forth above in
17 paragraphs 1 through 43 above, as though fully set forth herein.

18     45. Through its conduct alleged herein, Defendants knowingly and
19 systematically induced, caused, materially contributed to and participated in
20 infringing distribution by third parties of the Playero Works and derivative works
21 thereof, including, without limitation, by way of reproduction and distribution of
22 digital and physical copies, and by public performance via web streaming.
23 Specifically, by licensing to third parties the right to distribute and/or publicly
24 perform "Safaera," both physically and digitally, the Defendants induced and
25 encouraged these third parties to directly infringe Plaintiff's copyright in the
26 Playero Works.

27     46. Defendants' conduct has been and continues to be intentional, willful
28 and with full knowledge of Plaintiff's copyright in the Playero Works, and the

contributory infringement thereof.

47. Pursuant to 17 U.S.C. § 504(b), as a direct and proximate result of Defendants' contributory infringement of Plaintiff's copyright, Plaintiff is entitled to recover his actual damages, including Defendants' profits from infringement, as will be proven at trial. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to recover up to $150,000 in statutory damages for each infringed work.

48. Plaintiff is also entitled to recover his attorneys' fees and costs pursuant to 17 U.S.C. § 505, and prejudgment interest according to law.

49. Defendants are causing, and unless enjoined by the Court, will continue to cause, Plaintiff irreparable harm for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued contributory infringement of the Playero Works, and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing works.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for Judgment as follows:

**On the First Claim for Direct Copyright Infringement:**

1. For an award of damages, including actual damages and the disgorgement of any and all gains, profits and advantages obtained by Defendants, as a result of their acts of infringement in an amount according to proof at trial, or, alternatively, for an award of statutory damages in an amount of up to $150,000 for each infringing work, according to proof at the time of trial;

2. For a temporary, preliminary and permanent injunction, prohibiting the continued infringement of the Playero Works during the term of copyright; and

3. For Plaintiff's attorneys' fees and costs.

\\

**On the Second Claim for Contributory Copyright Infringement:**

1. For an award of damages, including actual damages and the disgorgement of any and all gains, profits and advantages obtained by Defendants, as a result of their acts of contributory infringement in an amount according to proof at trial, or, alternatively, for an award of statutory damages in an amount of up to $150,000 for each infringing work, according to proof at the time of trial;
2. For a temporary, preliminary and permanent injunction, prohibiting the continued infringement of the Playero Works during the term of copyright; and
3. For Plaintiff's attorneys' fees and costs.

**On All Claims For Relief:**

1. For costs of suit and attorneys' fees incurred herein;
2. For prejudgment interest at the legal rate; and
3. For such other and further relief as the Court deems just and proper.

Dated: September 27, 2021            **JOHNSON & JOHNSON LLP**

                                    By  /s Neville Johnson
                                        Neville L. Johnson
                                        *Attorneys for Plaintiffs*

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: September 27, 2021 **JOHNSON & JOHNSON LLP**

By /s Neville Johnson
Neville L. Johnson
*Attorneys for Plaintiffs*